IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>SCOTT W. MEINER,<br><br>    Defendant. | No. CR 05-1019<br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the court pursuant to the defendant's motion to suppress statements. The court held an evidentiary hearing on this motion July 14, 2005, at which the defendant was present and represented by Assistant Federal Public Defender JoAnne Lilledahl. The government was represented by Assistant United States Attorney Sean Berry. It is recommended that the motion to suppress statements taken by Postal Inspector Ronald Jewell on April 8, 2005, should be suppress because they were not preceded by <u>Miranda</u> warnings. The government contends that the defendant was not in custody at the time the statements were made and therefore <u>Miranda</u> warnings were not required. The court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

This case presents very few factual disputes. On April 8, 2005, Postal Inspector Ronald Jewell was investigating complaints of missing mail. The series of complaints all pertained to mail that was missing from a route driven by Defendant Scott Meiner. Meiner worked for a private employer that contracted to pick up and deliver mail from small towns west of Dubuque including Sabula, Miles, Preston, Spragueville, Bellevue, and Lamont.

1

On April 8, 2005, Inspector Jewell placed "test" letters into the mail to be delivered by the defendant. The letters included things such as a transponder or fluorescent powder. As the defendant's truck proceeded from Preston to Bellevue, Jewell lost the signal from the transponder in one of the test letters, indicating to Inspector Jewell that the letter had been opened.

As the defendant's truck was parked at the Bellevue Post Office, Inspector Jewell pulled his car behind the truck so that the truck could not be driven away. The defendant was in the process of picking up mail from the Bellevue Post Office. Inspector Jewell approached the defendant, exposing his law enforcement badge. He was dressed in plain clothes and was wearing a t-shirt. His gun and handcuffs were not visible.

As Inspector Jewell approached the defendant, Inspector Jewell immediately asked the defendant, "What did you do with my mail?" When the defendant feigned a lack of understanding, Inspector Jewell stated in a firm voice, "I want my mail." Again, the defendant feigned ignorance but offered to permit Inspector Jewell to search his mail truck. Inspector Jewell got inside the truck and searched the truck briefly. Inspector Jewell then came out and told the defendant again that he wanted his mail back and wanted it immediately. The defendant then had a sudden change of demeanor in which he looked down, admitted that he had opened the mail, and had thrown it out the window of the truck. The defendant immediately stated that he had found the transponder device and knew that he was in trouble. He admitted that money he had taken from the letters could be found with a cellular telephone in the cab of the truck. The entire encounter up to this point took approximately five minutes.

At this point, Inspector Jewell got his camera and photographed the cellular telephone, the money, and took two pictures of the defendant from the front and side. He notified the postmaster of what he had found and notified the owner of the contract route so that the route could be completed that day.

Inspector Jewell then asked the defendant whether he would be willing to help Inspector Jewell find the test letters that the defendant had opened. The defendant indicated a willingness to do so. Because the defendant rode with Inspector Jewell, Jewell patted the defendant down before the defendant entered his car. He specifically told the defendant that it was for safety reasons and that the defendant was not under arrest. Jewell also offered to give the defendant a ride back to Dubuque, Iowa, when the mail had been found. They left at approximately 5:45 p.m. to find the mail and they looked until approximately 7:30 p.m. After the items of opened mail had been found, Jewell and the defendant drove back to Dubuque, a trip that lasted approximately one hour.

Once they arrived in Dubuque, the defendant agreed to give a formal statement to Investigator Jewell. The defendant was specifically told that he was not under arrest. He was given his Miranda warnings verbally and in writing. The defendant signed the warning and written waiver of rights at 8:52 p.m. (Government's Exhibit 2) and made a lengthy statement in his own handwriting (Government's Exhibit 3). Before he gave the statement, the defendant specifically indicated that he was giving the statement voluntarily and he was told that he could stop answering questions at any time. After he gave his written statement, the defendant was free to leave and was taken back to his car.

## CONCLUSIONS OF LAW

The United States Supreme Court's pronouncement in Miranda v. Arizona, 384 U.S. 436 (1966), mandated "that a person 'taken into custody or otherwise deprived of his freedom of action in any significant way' must be warned 'he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed' before law enforcement officers begin questioning." Id. at 444, quoted in United States v. Martin, 369 F.3d 1046, 1056 (8th Cir. 2004). However, "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in

3

custody.'" Oregon v. Mathiason, 429 U.S. 492, 495 (1977), quoted in United States v. Lebrun, 363 F.3d 715, 720 (8th Cir. 2004). Because this court determines that the defendant was not in custody when first questioned by Postal Inspector Jewell, Mr. Meiner was not entitled to the protections of by Miranda.

The Supreme Court has framed the issue of custody under Miranda as "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983), quoted in United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004). The appropriate inquiry under this test is how a reasonable person in Mr. Meiner's position would have felt, not how a random reasonable person "would have understood the situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984), quoted in Czichray, 378 F.3d at 826. This determination requires a consideration of the "totality of the circumstances that confronted the defendant at the time of questioning." United States v. Asxom, 289 F.3d 496, 500 (8th Cir. 2002), quoted in Czichray, 378 F.3d at 826.

Prior to 2004, the United States Court of Appeals for the Eighth Circuit relied on its precedent in United States v. Griffin, 922 F.2d 1343 (8th Cir. 1990), to determine whether a defendant was in custody at the time of questioning. In Griffin, the Eighth Circuit set forth six "coercive factors," to determine whether someone is in custody for Miranda purposes. Id. at 1349. The factors are not an exhaustive list and include: (1) whether the suspect was informed that he was not under arrest or told the questioning was voluntary; (2) whether the suspect was restrained; (3) "whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities"; (4) whether the suspect was coerced into answering questions; (5) whether a police-dominated atmosphere was present; and (6) whether the suspect was arrested when questioning concluded. Czichray, 378 F.3d at 827 (quoting Griffin, 922 F.2d at 1349).

However, in United States v. Czichray, the Eighth Circuit questioned the need for a determination of the factors set forth in Griffin. Id. at 827. The court noted that it had

4

"recently resolved the question of 'custody' as an en banc court with nary a mention of Griffin (citation omitted)," and stated that "[t]here is no requirement . . . that the Griffin analysis be followed ritualistically in every Miranda case." Id. Accordingly, the court reemphasized that the factors listed in Griffin "are not by any means exclusive, and that 'custody' cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." Id. Thus, in accordance with the above reasoning promulgated by the Eighth Circuit, it is appropriate to address the factors set forth in Griffin, but the factors are not dispositive. "The ultimate inquiry [remains] whether the defendant was restrained as though he were under formal arrest." Id. at 828.

It is clear that the first two Griffin factors favor the government here. Mr. Meiner and Postal Inspector Jewell stated during the July 14, 2005, hearing on this matter that Mr. Meiner was clearly informed he was not under arrest and he was never physically restrained. Mr. Meiner argues that by blocking his vehicle, Postal Inspector Jewell restrained Mr. Meiner. The defendant was at work and his truck belonged to the contract mail carrier for whom Mr. Meiner worked. Mr. Meiner's person was never physically restrained, never placed in handcuffs, and never told he could not leave the premises of the Bellevue Post Office. Furthermore, there is no evidence that Postal Inspector Jewell either took possession of Mr. Meiner's cellular telephone, or prevented him from contacting any one on it. The Eighth Circuit has held that a suspect was not in custody when he was not physically restrained in any manner, not placed in handcuffs, and had access to his cellular telephone. United States v. Lebrun, 363 F.3d 715, 722 (8th Cir. 2004).

Furthermore, the third Griffin factor, whether Mr. Meiner voluntarily acquiesced to or initiated questioning, favors the government as well. Although questioning was initiated by Postal Inspector Jewell, with the exception of Mr. Meiner's first two denials when asked by Postal Inspector Jewell about the whereabouts of the planted mail, Mr. Meiner quickly and voluntarily stated where the mail was, where the money was, what

5

he had done with the tracking device, and why he had done what he did. Mr. Meiner freely admitted during the hearing that he has a tendency to want to answer questions and that he tried to be as forthcoming with Inspector Jewell as possible.

The remaining Griffin factors do not support Mr. Meiner's argument that he was in custody at the time of his initial questioning by Postal Inspector Jewell. Mr. Meiner, as he admitted at the hearing, voluntarily answered Postal Inspector Jewell's questions. He was never threatened, nor does it seem that Postal Inspector Jewell ever spoke to Mr. Meiner in anything but a firm voice. Mr. Meiner's claim that he somehow felt compelled to answer Postal Inspector Jewell's questions in order to obtain a ride to Dubuque is unpersuasive. Mr. Meiner had his cellular telephone and Bellevue is only approximately 25 miles from Dubuque. Postal Inspector Jewell had not detained any of Mr. Meiner's personal property, such as a vehicle, that would in any way impede his ability to get to Dubuque. There is no evidence that persuades this court that Mr. Meiner's statements were somehow coerced. Likewise, Mr. Meiner's argument that a police-dominated atmosphere was somehow present is unpersuasive. Postal Inspector Jewell was the only individual to question Mr. Meiner. He approached the defendant at work, outside in plain clothes with no gun or handcuffs displayed. Although the second portion of the interview took place at the Dubuque County Sheriff's Department, no individuals from the sheriff's department were present. The fact that Mr. Meiner voluntarily answered Postal Inspector Jewell's questions, helped him locate the mail and the tracking device, accepted Postal Inspector Jewell's offer of a ride to Dubuque (where Mr. Meiner rode in the front seat alongside Postal Inspector Jewell), and the lack of any other presence of law enforcement officials at any time during the questioning, all negate Mr. Meiner's arguments. The photographs taken of the defendant by Inspector Jewell were not "mug shots." The sixth Griffin factor favors the government because Mr. Meiner was not arrested at the conclusion of his questioning by Postal Inspector Jewell.

Although no Eighth Circuit case law analogous to the unique instant issue exists, the United States Court of Appeals for the Third Circuit has dealt with almost this precise issue. See United States v. Leese, 176 F.3d 740 (3d Cir. 1999). On February 18, 1998, Postal Inspector Nick Alicea interviewed postal employee Vicki S. Leese at the Manchester, Pennsylvania, post office in regards to certain money order discrepancies that were found to have occurred in late-1997. Id. at 742. During the interview, Ms. Leese was interviewed by Postal Inspectors Alicea and Jeffrey Fry. Id. The interview took place in the Postmaster's office, behind closed doors. Id. Ms. Leese was told that she was not under arrest and would not be arrested at the end of the interview, but she was not told "that she was free to leave or stop answering questions at any time." Id. The Third Circuit also noted that Postal Inspector Alicea wore a visible firearm during the interview. Id. Ms. Leese was not informed of her Miranda rights at any time during the interview. Id. After the interview had begun, Ms. Leese requested the presence of her union representative and questioning was stopped until this occurred. Id.

Upon a review of the above facts, which are almost identical to the instant issue, the Third Circuit held that Ms. Leese "was not in custody at the time she gave her statement in the Postmaster's office." Id. at 744. The Third Circuit relied heavily upon the fact that Ms. Leese was told she was not and would not be placed under arrest and her request to meet with her union representative was promptly granted. Id. The Third Circuit also stated that "[t]here [was] nothing in the record to suggest that the inspectors would not have departed on request or allowed Leese to do so." Id.

Although a determination of custody under the Griffin standard is not dispositive, the fact that none of the six factors favors the defendant here. Upon a consideration of the totality of the circumstances at the time of Mr. Meiner's questioning, it is the determination of this court that at no time was Mr. Meiner "restrained as though he were under formal arrest." See Czichray, 378 F.3d at 828. Furthermore, this court finds the Third Circuit's reasoning in Leese analogous to the instant issue and persuasive. Because

7

the defendant's claim under <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), is dependant upon the success of his custody claim, this court need not address this argument.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the defendant's motion to suppress be denied.

July 21, 2005.

                                                          _____
                                                          JOHN A. JARVEY
                                                          Magistrate Judge
                                                          UNITED STATES DISTRICT COURT

---

[1] Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.