# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT W. MEINER,<br><br>Defendant. | No. CR 05-1019-LRR<br><br>**ORDER** |

_____

**TABLE OF CONTENTS**

I.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  OBJECTIONS TO THE REPORT AND RECOMMENDATION . . . . . . . . 2

IV.  FACTUAL FINDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.  LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Before the court are Defendant Scott W. Meiner's Objections (docket no. 20) to the Report and Recommendation (docket no. 18) denying Meiner's Motion to Suppress (docket no. 12).

## *I. PROCEDURAL BACKGROUND*

On May 18, 2005, Scott W. Meiner was indicted on six counts of theft of United States mail, in violation of 18 U.S.C. § 1708 (docket no. 1). On July 8, 2005, Meiner

filed a Motion to Suppress incriminating statements he made on April 8, 2005, after a postal inspector confronted him about missing mail (docket no. 12). Meiner alleged the statements were variously obtained contrary to *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Missouri v. Seibert*, 542 U.S. 600 (2004). The government filed a Resistance on July 13, 2005 (docket no. 15).

On July 14, 2005, Chief Magistrate Judge John A. Jarvey held a hearing on Meiner's motion. A week later, on July 21, 2005, Judge Jarvey issued a Report and Recommendation (docket no. 18) in which he recommended this court deny the motion. On August 4, 2005, Meiner filed timely Objections to the Report and Recommendation (docket no. 20).

## II. STANDARD OF REVIEW

A district court judge must make a *de novo* determination of those portions of a magistrate's report or recommendation to which a party objects. 28 U.S.C. § 636(b)(1); *see, e.g., United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). The judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1). Because Meiner has made timely and specific objections in this case, the following *de novo* review is required.

## III. OBJECTIONS TO THE REPORT AND RECOMMENDATION

Meiner generally objects to Magistrate Judge Jarvey's recommendation to deny his motion to suppress. Meiner makes two specific objections. First, Meiner contends he was in custody before he was read the *Miranda* warnings. He therefore demands that all statements given during that time be suppressed. Second, Meiner disagrees with the recommendation not to decide whether *Seibert* requires suppression of statements he gave after he was read the *Miranda* warnings. Predicated upon his conclusion that he was previously in custody, Meiner argues these later statements were

given in the middle of a custodial interrogation without a meaningful opportunity to make an informed choice about making a statement.

## IV. FACTUAL FINDINGS

After conducting a *de novo* review of the record, the court makes the following factual findings:

The defendant, Scott W. Meiner, picked up and delivered mail in a number of small towns outside Dubuque while working for a private company on contract with the United States Postal Service. After customers on Meiner's route complained of missing mail, Postal Inspector Ronald Jewell placed test letters on Meiner's route. One of the test letters included a transmitter, which was designed to lose its signal if the letter was opened.

When Inspector Jewell lost the signal on the transmitter, he confronted Meiner at the Bellevue Post Office. Meiner had backed the truck he was driving into the loading dock at the post office; Inspector Jewell parked his car in front of the truck so that Meiner could not get away with the truck. Inspector Jewell approached Meiner, showed his badge, and asked "What did you do with my mail?" When Meiner indicated he did not know what Inspector Jewell was talking about, Inspector Jewell told him, "I want my mail." Meiner let Inspector Jewell search the cab of the truck, but nothing turned up. After Inspector Jewell repeated his demand, Meiner admitted he had opened the mail, found the transmitter, realized he was in trouble, and threw the whole thing out the window. Inspector Jewell then asked Meiner where the money was. Meiner told Inspector Jewell that the money he had taken from the letters was in the cab of the truck in his cell phone battery case. In the battery case, Inspector Jewell found two $20 bills. Inspector Jewell later traced one of these bills to a bill placed in a

3

test letter; the other bill came from a customer's letter.  The entire encounter lasted approximately five minutes.

Inspector Jewell took photographs of the cell phone and the money.  He also took two pictures of Meiner—one from the front and one from the side. (When considered in context, however, the court finds the photographs could not be "mug shots," as Meiner contends.)  Inspector Jewell told the local postmaster and the owner of the contract route what had happened so that someone else could finish Meiner's route.[1]

Inspector Jewell asked Meiner if he would help him find the test letters Meiner had thrown out the window.  Inspector Jewell offered to give Meiner a ride back to Dubuque after they found the mail.  Meiner agreed to help and accepted Inspector Jewell's offer of a ride.

Before Meiner got into his car, Inspector Jewell patted Meiner down.  Inspector Jewell told Meiner he was patting him down for safety reasons only.  He specifically told Meiner he was not under arrest.  Meiner then got into the front seat of Inspector Jewell's car, and the duo canvassed Meiner's route for almost two hours.  They eventually found the missing mail and made the hour-long trip back to Dubuque.

When they arrived at the Dubuque County Sheriff's Office, Inspector Jewell again told Meiner he was not under arrest.  He also read him the *Miranda* warnings. Meiner then gave Inspector Jewell a formal statement, but not before he indicated he was making his statement voluntarily and knew he could stop answering questions at any time.  In his statement, Meiner confessed to stealing mail for two years whenever he was short on money.

---

[1] In Inspector Jewell's words, "[t]he mail must go on." (Tr. 18)

Meiner also agreed to be photographed and fingerprinted. He later left and went home in his own car, which was parked near the sheriff's office.

### *V. LEGAL ANALYSIS*

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436, the Supreme Court

> concluded that the possibility of coercion inherent in custodial interrogations unacceptably raises the risk that a suspect's privilege against self-incrimination might be violated. To protect against this danger, the *Miranda* rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for the prosecution's case in chief.

*United States v. Patane*, 542 U.S. 630, 676 (2004) (citations omitted). The primary question presented in this motion to suppress is whether Meiner was in custody when he made statements to Inspector Jewell before receiving the *Miranda* warnings at the sheriff's office.

To determine whether a person is in custody, "the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (internal quotation omitted). The court must look at "the totality of the circumstances confronting the defendant at the time of questioning." *United States v. Brave Heart*, 397 F.3d 1035, 1038 (8th Cir. 2005). The determination of custody "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the persons being questioned." *Stansbury v. California*, 511 U.S. 318, 320 (1994) (per curiam). The relevant inquiry is how a

reasonable person in the defendant's shoes would have understood the situation. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

In recent years, the Eighth Circuit has looked to a number of factors to determine whether a defendant was custody. These include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). These factors, however, are nonexhaustive and should not be applied ritualistically. *See id.*; *see also Brave Heart*, 397 F.3d at 1039 ("[T]he indicia of custody identified in *Griffin* are by no means exhaustive and should not be applied ritualistically, counting indicia which contribute to custody against those which detract."); *United States v. Czichray,* 378 F.3d 822, 828 (8th Cir. 2004) (encouraging courts not to "lose sight of the forest for the trees" in focusing on the *Griffin* factors, but rather to seize upon the "ultimate inquiry" of "whether the defendant was restrained as if he were under formal arrest"), *cert. denied,* 125 S. Ct. 2514 (2005).

After examining the totality of the circumstances—including but not limited to the *Griffin* factors set forth above—the court finds Meiner was not in custody before he was read his *Miranda* rights. Meiner's initial statements to Jewell were made in a parking lot, a public place. *See United States v. Martin*, 369 F.3d 1046, 1057 (8th Cir.

2004) (noting fact officers interviewed defendant in public place an indication he was not in custody). This encounter with a lone law enforcement officer was clearly not in a police-dominated atmosphere. *See Griffin*, 922 F.2d at 1349 (recognizing absence of police-dominated atmosphere weighs against a finding of custody). No strong arm tactics or deceptive stratagems were used. *See id.* Inspector Jewell, who was dressed in plain clothes, showed his badge but did not display his firearm. Meiner was never handcuffed or otherwise restrained. *See United States v. LeBrun*, 363 F.3d 715, 722 (8th Cir. 2004) (holding defendant who was not handcuffed or restrained in any other manner was not in custody), *cert denied*, 125 S. Ct. 1292 (2005). Although Inspector Jewell blocked in the truck Meiner had driven, Meiner did not own the truck. Inspector Jewell did not confiscate any of Meiner's personal property.

Although Meiner did not initiate contact with law enforcement, he made his statements to Inspector Jewell voluntarily. At the suppression hearing, Meiner admitted he was "trying to be as cooperative as possible" with Inspector Jewell; "[t]he way I am . . . I just want to try [to] be as cooperative as possible. . . ." (Tr. 64) Indeed, Meiner confessed within five minutes. Simply because a law enforcement officer asks a suspect a few stern questions does not, standing alone, rise to the level of formal arrest. *See Oregon v. Mathiason,* 429 U.S. 492, 495 (1977) ("[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question."); *see also Beckwith v. United States*, 425 U.S. 341, 347 (1976) (finding defendant was not "in custody" simply because he was the focus of the law enforcement officer's investigation when interviewed).

The court does not find Meiner's allegation that he was forced to answer Inspector Jewell's questions to get a ride home that night to be credible. A reasonable

7

person in Meiner's shoes would not have understood matters that way. Before entering the car, Inspector Jewell specifically told Meiner he was not under arrest. *See Griffin*, 922 F.2d at 1349 (recognizing the fact suspect was informed he was not under arrest weighs against a finding of custody). He was never told he was under arrest or not free to leave. As they traversed the area looking for the missing mail, Meiner rode in the front seat of the car, not in the back. *See LeBrun*, 363 F.3d at 723 (distinguishing placement of the defendant in the backseat from a ride the front seat). Meiner also had his cell phone with him the entire time. *See id.* at 722 (recognizing possession of a cellular phone as a factor supporting a finding of no custody; the "cellular phone . . . to some extent mitigated the incommunicado nature of interrogations with which the *Miranda* Court was concerned and the psychological pressure associated with being isolated in an interview room"). Importantly, at the end of the interview Inspector Jewell did not arrest Meiner. Instead, Meiner walked to his car and drove home. *See United States v. Galceran,* 301 F.3d 927, 931 (8th Cir. 2002) (stating that lack of arrest was a "'very important' factor weighing against custody" (quoting *United States v. Sutera*, 933 F.2d 641, 647 (8th Cir. 1991)); *see also Martin*, 369 F.3d at 1057; *LeBrun*, 363 F.3d at 722; *Griffin*, 922 F.2d at 1349.

For all the foregoing reasons, the court finds Meiner was not "in custody" for purposes of *Miranda*.[2] Therefore the statements Meiner made to Investigator Jewell

---

[2]In the court's Report and Recommendation, Judge Jarvey relied upon a case from another circuit with similar facts, *United States v. Leese*, 176 F.3d 740 (3d Cir. 1999). Meiner contends *Leese* is distinguishable because in that case the postal inspectors twice stopped questioning the defendant so she could talk with her union representative. Meiner argues his case is different because Investigator Jewell accompanied him the entire time, including to the bathroom.

Because this court has already found Meiner was not in custody based upon a *de*
(continued...)

before he was read the *Miranda* warnings need not be suppressed.

Because Meiner's *Seibert* claim necessarily depends upon the success of his custody claim, Chief Magistrate Judge Jarvey decided it was not appropriate to reach the merits of the former claim in this case. Because the court agrees Meiner was not in custody prior to the time he was read the *Miranda* warnings, the court also holds *Seibert* is inapplicable here.

For the foregoing reasons, Meiner's Motion to Suppress is denied and his objections to Chief Magistrate Judge Jarvey's Report and Recommendation are overruled.

## *VI. CONCLUSION*

**IT IS ORDERED:**

(1) Defendant Scott W. Meiner's Objections (docket no. 20) to the Report and Recommendation (docket no.18) are **OVERRULED**.

(2) Magistrate Judge Jarvey's Report and Recommendation (docket no. 18) is **ADOPTED**.

---

[2](...continued)
*novo* review of the record and a survey of Supreme Court and Eighth Circuit Court of Appeals precedent, it need not specifically discuss *Leese*. Even if *Leese* were controlling authority, however, it would support the government's argument. While it is true the defendant in *Leese* was allowed to consult her union representative, there is nothing in the record in the case at bar to show that Meiner would not have received the same or similar courtesy had he asked for it. The totality of the circumstances shows Meiner was free to leave at any time. If anything, *Leese* presents more indicia of custody than the case at bar because there the questioning occurred in a more police-dominated atmosphere; two postal inspectors, one displaying a firearm, questioned the defendant in the postal inspector's office.

(3)  Defendant Scott W. Meiner's Motion to Suppress (docket no. 12) is **DENIED.**

(4)  The time between the filing of Meiner's Motion to Suppress and the date of this Order is hereby excluded from calculation under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the conclusion of the hearing thereon); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**DATED** this 16th day of August, 2005.

*[signature]*
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA